No. 22-50267

# In the United States Court of Appeals for the Ninth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

JORGE LUIS FLORES-ALTAMIRANO,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Central District of California
The Honorable Dolly M. Gee, Presiding
No. ED CR-18-00242-DMG

## Appellant's Reply Brief

CUAUHTEMOC ORTEGA
Federal Public Defender
HOWARD SHNEIDER
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012
213-894-1456

*Counsel for Defendant-Appellant*

# Table of Contents

Table of Authorities ................................................................ iv

Reply ........................................................................................1

1. The government has waived arguments not made in its answering brief. ......2

2. Suppression is required because the record does not support a finding of probable cause that Flores-Altamirano violated 8 U.S.C. § 1326...................3

3. Alternatively, suppression is an available remedy for the officers' violation of 8 U.S.C. § 1357(a). ....................................................10

   A. The government does not dispute that the ICE officers could have obtained a warrant before arresting Flores-Altamirano, so there was no likelihood of Flores-Altamirano escaping before a warrant could be obtained and his arrest violated the statute..............................................10

   B. Contrary to what the government claims, the district court legally erred by failing to recognize its discretion to grant suppression if doing so would deter future statutory violations or if there was flagrant government misconduct. ...........................................................13

C.  The government does not dispute that if suppression is not

categorically precluded here, the Court should remand for the district

court to exercise its discretion. ................................................................ 19

Certificate of Compliance re Brief Length ............................................................ 22

# Table of Authorities

<u>**Cases**</u>

*Adams v. Williams*,
    407 U.S. 143 (1972)................................................................6, 7

*Birchfield v. North Dakota*,
    579 U.S. 438 (2016)..................................................................16

*Estate of Saunders v. C.I.R.*,
    745 F.3d 953 (9th Cir. 2014) ......................................................6

*Gasho v. United States*,
    39 F.3d 1420 (9th Cir.1994) ..............................................5, 6, 8

*Gonzalez v. City of Schenectady*,
    728 F.3d 149 (2d Cir. 2013) ........................................................9

*Hardigree v. Lofton*,
    992 F.3d 1216 (11th Cir. 2021) ..................................................8

*Hart v. Massanari*,
    266 F.3d 1155 (9th Cir. 2001) ....................................................5

*Illinois v. Wardlow*,
    528 U.S. 119 (2000)....................................................................7

*Jump v. Village of Shorewood*,
    42 F.4th 782 (7th Cir. 2022) ......................................................8

*Karns v. Shanahan*,
    879 F.3d 504 (3d Cir. 2018) ......................................................9

*McNabb v. United States*,
    318 U.S. 332 (1943)..................................................................14

*Miller v. United States*,
    357 U.S. 301 (1958)..................................................................14

*Noguera v. Davis*,
    5 F.4th 1020 (9th Cir. 2021) ......................................................2

iv

*Sanchez-Llamas v. Oregon*,
    548 U.S. 331 (2006)................................................................15, 16

*United States v. Ballesteros-Selinger*,
    231 F. App'x 652 (9th Cir. 2007) .........................................5

*United States v. Brugnara*,
    856 F.3d 1198 (9th Cir. 2017) ..............................................2

*United States v. Contreras*,
    672 F.2d 307 (2d Cir. 1982) ...........................................11, 12

*United States v. Cruz*,
    554 F.3d 840 (9th Cir. 2009) ................................................2

*United States v. Cuenca-Vega*,
    2012 WL 1067393 (N.D. Cal. 2012) ................................12, 13

*United States v. Davis*,
    53 F.4th 833 (5th Cir. 2022) ................................................8

*United States v. Diaz-Lopez*,
    625 F.3d 1198 (9th Cir. 2010) ..............................................5

*United States v. Dreyer*,
    804 F.3d 1266 (9th Cir. 2015) ........................................14, 17

*United States v. Juvenile Male*,
    670 F.3d 999 (9th Cir. 2012) ................................................2

*United States v. Kirilyuk*,
    29 F.4th 1128 (9th Cir. 2022) ..............................................6

*United States v. Kirst*,
    54 F.4th 610 (9th Cir. 2022) ................................................8

*United States v. Lundin*,
    817 F.3d 1151 (9th Cir. 2016) ............................................20

*United States v. Ngumezi*,
    980 F.3d 1285 (9th Cir. 2020) ............................................18

*United States v. Nora*,
765 F.3d 1049 (9th Cir. 2014) .............................................................7

*United States v. Orozco-Acosta*,
607 F.3d 1156 (9th Cir. 2010) ........................................................4, 5

*United States v. Perez-Silvan*,
861 F.3d 935 (9th Cir. 2017) ..............................................................2

*United States v. Ramirez*,
976 F.3d 946 (9th Cir. 2020) ..............................................................2

*United States v. Roberts*,
779 F.2d 565 (9th Cir. 1986) ............................................................14

*United States v. Santos-Portillo*,
997 F.3d 159 (4th Cir. 2021) ......................................................14, 15

*United States v. Thornton*,
710 F.2d 513 (9th Cir. 1983) ..............................................................6

*United States v. Torres*,
995 F.3d 695 (9th Cir. 2021) ..............................................................6

*United States v. Valdovinos-Mendez*,
641 F.3d 1031 (9th Cir. 2011) ............................................................5

*Velazquez v. City of Long Beach*,
793 F.3d 1010 (9th Cir. 2015) ............................................................8

*Williams v. City of Alexander*,
772 F.3d 1307 (8th Cir. 2014) ............................................................9

## U.S. Constitution

U.S. Const., Amend. IV ....................................................................*passim*

## Statutes

8 U.S.C. § 1326........................................................................3, 5, 9, 18

18 U.S.C. § 1357 ............................................................................*passim*

## **<u>Rules</u>**

Fed. R. App. P. 32 ................................................................................................22

Cir. R. 36-3 ........................................................................................................5

# Reply

In violation of the Fourth Amendment and 18 U.S.C. § 1357(a), ICE officers arrested Jorge Luis Flores-Altamirano without a warrant. That arrest violated the Fourth Amendment because the ICE officers lacked probable cause to believe Flores-Altamirano had not sought permission to reapply for admission to the United States. Because the government failed to meet its burden to establish probable cause, the Court should reverse and remand with instructions to grant Flores-Altamirano's suppression motion.

But even if the Court does not find a Fourth Amendment violation, a remand is required. The ICE officers violated § 1357(a) because they did not get an administrative warrant, even though there was no likelihood of Flores-Altamirano escaping before a warrant could be obtained. Given that violation, the district court could have granted suppression if it had found that that remedy would deter future statutory violations or if it found there was flagrant government misconduct. Because the district court did not realize it had the power to grant suppression, the Court should remand to give the district court the ability to conduct pertinent factfinding and determine whether suppression is appropriate in the first instance.

## 1. The government has waived arguments not made in its answering brief.

A party waives issues not "argued specifically and distinctly" in its initial brief. *United States v. Perez-Silvan*, 861 F.3d 935, 938 (9th Cir. 2017) (cleaned up). "Applying this standard," the Court has "refused to address claims that were only argued in passing or that were bare assertions with no supporting argument." *United States v. Juvenile Male*, 670 F.3d 999, 1015 (9th Cir. 2012) (cleaned up); *see also Noguera v. Davis*, 5 F.4th 1020, 1029 n.3 (9th Cir. 2021) ("The summary mention of an issue in a footnote, without reasoning in support of the party's argument, is insufficient to raise the issue on appeal.") (cleaned up), *cert. denied*, 142 S. Ct. 1695 (2022). The Court applies the waiver rule "with some vigor against criminal defendants;" it "should be no less vigorous in applying it against the government." *United States v. Cruz*, 554 F.3d 840, 848 (9th Cir. 2009) (cleaned up); *see also United States v. Ramirez*, 976 F.3d 946, 955 n.3 (9th Cir. 2020) ("When the government does not make an argument that was available at the time it filed its answering brief it has waived that argument.") (cleaned up). Thus, the Court "cannot manufacture arguments" for the government. *See United States v. Brugnara*, 856 F.3d 1198, 1209 (9th Cir. 2017) (cleaned up).

## 2. Suppression is required because the record does not support a finding of probable cause that Flores-Altamirano violated 8 U.S.C. § 1326.

The government agrees that whether Flores-Altamirano's arrest complied with the Fourth Amendment hinges on whether the officers had probable cause to believe Flores-Altamirano had violated 8 U.S.C. § 1326.[1] The government does not dispute that a noncitizen commits this crime only if he reentered the country without permission to reapply for admission, so it has waived any argument to the contrary.[2] As explained in the opening brief, the government failed to meet its burden to prove that the officers looked into whether Flores-Altamirano had such permission, so they did not have probable cause.[3] The government offers two arguments in response.

A. The government asserts that a box checked "NEG" next to the word "CLAIMS" on the Field Operations Worksheet (FOW) "confirmed that defendant had not sought permission to re-apply for admission[.]"[4] But the government did

---

[1]   GAB-15–16; AOB-16–17.

[2]   *Supra* Part 1.

[3]   AOB-16–20.

[4]   GAB-6, 17; ER-110.

not make this claim below,[5] nor did it have the ICE officers address the assertion in their government-drafted declarations.[6] As a result, there is no evidence in the record that the alleged "negative result on the CLAIMS query" means that the officers specifically checked the CLAIMS database to determine whether Flores-Altamirano had sought permission to reapply for admission.[7]

Nor does caselaw support the government's assumption about the checked box on the FOW. Flores-Altamirano cited cases in his opening brief to show ICE officers *can* search databases to determine whether a person requested permission to reapply for admission the United States. *See*, *e.g.*, *United States v. Orozco-Acosta*, 607 F.3d 1156, 1162 (9th Cir. 2010) (agent "testified that if Orozco-Acosta had filed the form required to reapply for admission, this fact would have been documented . . . in the agency's C.L.A.I.M.S. database").[8] The government cites those same cases to support its *assumption* that the box checked "NEG" next to "CLAIMS" on the FOW means that Flores-Altamirano did not seek or receive permission to reapply for admission.[9] But none of the cases even discussed FOWs,

---

[5] ER-57–80.

[6] ER-91–98.

[7] GAB-17

[8] AOB-18–19.

[9] GAB-17–18.

let alone the meaning of the boxes checked on a given FOW. *See United States v. Valdovinos-Mendez*, 641 F.3d 1031, 1033-34 (9th Cir. 2011); *United States v. Diaz-Lopez*, 625 F.3d 1198, 1199 (9th Cir. 2010); *Orozco-Acosta*, 607 F.3d at 1162.

B. Faced with its failure to prove that the ICE officers had probable cause given the absence of evidence concerning an element of a § 1326 crime, the government claims that an officer does not need probable cause as to every element of an offense, citing *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir.1994).[10] It is wrong.

---

[10] GAB-17. The government also cites *United States v. Ballesteros-Selinger*, 231 F. App'x 652, 656 n.3 (9th Cir. 2007). GAB-17. This unpublished memorandum decision isn't precedent. *See* Cir. R. 36-3(a). Nor is it persuasive as to the issue of probable cause. "Precedential opinions are meant to govern not merely the cases for which they are written, but future cases as well." *Hart v. Massanari*, 266 F.3d 1155, 1176 (9th Cir. 2001). In contrast, an unpublished memorandum decision— akin to "a letter from the court to parties familiar with the facts, announcing the result and the essential rationale of the court's decision"—"is not written in a way that will be fully intelligible to those unfamiliar with the case, and the rule of law is not announced in a way that makes it suitable for governing future cases." *Id.* at 1178. The bare-bones analysis of probable cause in *a footnote* in *Ballesteros-Selinger* makes it a prime example of why unpublished decisions should not guide future cases.

First, *Gasho* merely cited *United States v. Thornton*, 710 F.2d 513 (9th Cir. 1983), and this is the entirety of the relevant discussion in that case: "Probable cause does not require specific evidence of every element of an offense. *Adams v. Williams*, 407 U.S. 143, 149 (1972)." *Thornton*, 710 F.2d at 515 (parallel citations for *Adams* omitted). It's well-settled that "statements made in passing, without analysis, are not binding precedent." *United States v. Torres*, 995 F.3d 695, 704 n.5 (9th Cir. 2021) (cleaned up); *see also Estate of Saunders v. C.I.R.*, 745 F.3d 953, 960-61 (9th Cir. 2014) ("[W]here it is clear that a statement is made casually and without analysis, where the statement is uttered in passing without due consideration of the alternatives, or where it is merely a prelude to another legal issue that commands the panel's full attention, it may be appropriate to re-visit the issue in a later case.") (cleaned up). Therefore, *Thornton*'s one-line reference to *Adams* cannot mean anything more than what *Adams* itself actually held.[11] In that

---

[11] The same is true for any subsequent cases that have repeated the *Thornton*/*Gasho* statement without analysis because "prior precedent that does not squarely address a particular issue does not bind later panels on the question." *United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) (cleaned up); *see also id.* ("As we have repeatedly stated, questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents. Thus, cases are

6

case, the Supreme Court wrote: "Probable cause does not require the *same type of specific evidence* of *each element* of the offense as would *be needed to support a conviction*." *Adams*, 407 U.S. at 149 (emphasis added); *see also United States v. Nora*, 765 F.3d 1049, 1053 (9th Cir. 2014) (accurately quoting this language from *Adams*). In other words, the Court merely stated that probable cause does not require proof beyond a reasonable doubt of each element, not that probable cause need not take into account all the elements of the crime at issue. Indeed, to hold otherwise would disregard the Supreme Court's pronouncement that, "[w]hile reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. The officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000) (cleaned up). An officer who lacks probable cause as to any element has, at best, only a hunch that the suspect committed the crime.

---

not precedential for propositions not considered, or for matters that are simply assumed. Indeed, if a prior case does not raise or consider the implications of a legal argument, it does not constrain our analysis.") (cleaned up).

7

Thus, an officer must have probable cause for every element of an offense to arrest, just as a grand jury must have probable cause for every element to indict. *See United States v. Davis*, 53 F.4th 833, 845 (5th Cir. 2022) ("one of the central purposes of an indictment" is "to ensure that the grand jury finds probable cause that the defendant has committed each element of the offense, hence justifying a trial, as required by the Fifth Amendment.") (cleaned up), *cert. denied*, 2023 WL 6377805 (U.S. Oct. 2, 2023); *United States v. Kirst*, 54 F.4th 610, 627 (9th Cir. 2022) (Collins, CJ, concurring in part and dissenting in part) (proper indictment "reflects a grand jury's finding of probable cause as to each element."), *cert. denied*, 143 S. Ct. 2681 (2023).

The government's misinterpretation of *Gasho* would require ignoring substantial authority recognizing that probable cause that someone committed a crime necessarily depends on the elements of the particular crime at issue. *See, e.g., Velazquez v. City of Long Beach*, 793 F.3d 1010, 1026-27 (9th Cir. 2015) (noting that in civil action where reasonable suspicion or probable cause at issue, jury must be instructed as to the elements of applicable crime); *Jump v. Village of Shorewood*, 42 F.4th 782, 788-89 (7th Cir. 2022) ("The existence of probable cause depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law.") (cleaned up); *Hardigree v. Lofton*, 992 F.3d

8

1216, 1230 (11th Cir. 2021) ("Whether an officer possesses probable cause or arguable probable cause to arrest depends on the elements of the alleged crime and the operative facts."); *Karns v. Shanahan*, 879 F.3d 504, 523 (3d Cir. 2018) ("We look to the elements of the offense to determine whether an arrest was supported by probable cause."); *Williams v. City of Alexander*, 772 F.3d 1307, 1312 (8th Cir. 2014) ("For probable cause to exist, there must be probable cause for all elements of the crime, including *mens rea*."); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) ("To ascertain the existence of probable cause, we look at the facts as the officers knew them in light of the specific elements of each crime.").

Thus, the officers needed probable cause that Flores-Altamirano did not seek permission to reapply for admission in order to have probable cause to arrest him for a § 1326 crime. Because the government has not established that, Flores-Altamirano's arrest violated the Fourth Amendment. That should be the end of the matter, and the Court should reverse the district court's denial of the suppression motion.[12]

---

[12]  In his opening brief, Flores-Altamirano explained that if the arrest violated the Fourth Amendment, then suppression is required regardless of the statutory

### 3. Alternatively, suppression is an available remedy for the officers' violation of 8 U.S.C. § 1357(a).

Even if Flores-Altamirano's warrantless arrest did not violate the Fourth Amendment, it did violate 8 U.S.C. § 1357(a). Suppression is an available remedy for that violation, so the district court legally erred in concluding otherwise. The Court should therefore remand for the district court to decide in the first instance whether suppression is appropriate under the circumstances.

### A. The government does not dispute that the ICE officers could have obtained a warrant before arresting Flores-Altamirano, so there was no likelihood of Flores-Altamirano escaping before a warrant could be obtained and his arrest violated the statute.

In his opening brief, Flores-Altamirano emphasized that § 1357(a)(4) only allows ICE officers to arrest a person if he is likely to escape before a warrant can be obtained for his arrest. There was no evidence that the officers had reason to believe that was true as to Flores-Altamirano; on the contrary, the officers actually

---

arguments. AOB-20. The government does not contend otherwise, so it has waived any such arguments. *Supra* Part 1.

claimed they did get a warrant, even if the government failed to prove it.[13] The

government does not dispute that fact,[14] so it has waived any arguments to the

contrary.[15] Because likelihood of escape before a warrant can be obtained is a

prerequisite of § 1357(a)(4), Flores-Altamirano's arrest violated that statute.

The government points to language from an out-of-circuit case suggesting that

if "the alien's deportability is clear and undisputed," it can support a finding of

likelihood of escape.[16] *United States v. Contreras*, 672 F.2d 307, 309 (2d Cir.

1982). The government leans into this one statement from *Contreras*. It contends

Flores-Altamirano's deportability was "clear and undisputed" because he was

---

[13]  AOB-21–27. Ignoring that the district court based its ruling entirely on § 1357(a)(4) (*see* ER-184–85; AOB-12 n.59), the government occasionally refers to § 1357(a)(2) in its brief. GAB-18–20, 29–30, 34. But it offers no arguments for allowing this Court to affirm on a theory not adopted by the district court, nor does it explain why the Court should apply subsection (a)(2) rather than subsection (a)(4), as the district court did. It has therefore waived such arguments. *Supra* Part 1. But in any event, subsection (a)(2) includes an almost identical requirement as subsection (a)(4) that there be a likelihood of escape before a warrant can be obtained, so the same analysis applies to both subsections.

[14]  GAB-19–21.

[15]  *Supra* Part 1.

[16]  GAB-19–21.

subject to reinstatement of a prior removal order.[17] Flores-Altamirano addressed *Contreras* in his opening brief.[18] He explained the language cited by the government is not the case's holding and that, in reality, *Contreras* analyzed all the circumstances in play rather than focusing on just the fact of deportability. *Id.* at 308-09. The government failed to address the substance of this argument, and its failure to do so leaves its position incomplete and unpersuasive.

In an effort to bolster its claim, the government cites a district court order that failed to properly address whether an ICE agent could have obtained a warrant before arresting the defendant.[19] In *United States v. Cuenca-Vega*, the ICE agent concluded the defendant had prior removal orders, felony convictions, and a removal order in place at the time of the arrest. 2012 WL 1067393, *1 (N.D. Cal. 2012). Based on that information alone, and without any legal analysis whatsoever, the district court baldly asserted that "the arresting ICE agent had reason to believe that escape would be likely if defendant was not arrested." *Id.* But the district court failed to analyze whether a warrant could have been obtained before the arrest. Moreover, the order provided only scant details about the circumstances of the

---

17  GAB-20–21.

18  AOB-25–26.

19  GAB 19–20.

arrest, precluding any meaningful comparison to what happened here. *Id*. Just as the government's failure to grapple with the ability to obtain a warrant before the arrest leaves its analysis wanting, so too was the district court's analysis in *Cuenca-Vega* lacking.

At bottom, the government has failed to come forward with any record evidence to support the conclusion that the ICE officers here could not have obtained a warrant before arresting Flores-Altamirano. The officers therefore violated § 1357(a)(4).

**B. Contrary to what the government claims, the district court legally erred by failing to recognize its discretion to grant suppression if doing so would deter future statutory violations or if there was flagrant government misconduct.**

Like the district court,[20] the government invokes out-of-circuit authority that holds suppression is not an available remedy for a violation of § 1357(a).[21] The government claims that because § 1357(a) does not explicitly mention suppression or, in its view, implicate constitutional interests, suppression is not available. But neither the Supreme Court nor this Court has held that the *only* time suppression

---

[20] ER-185.

[21] GAB-21–24.

13

can be a remedy for a statutory violation is when the statute explicitly mentions suppression or involves a constitutional violation. To the contrary, as Flores-Altamirano explained in his opening brief, the Supreme Court and Ninth Circuit have repeatedly recognized courts' inherent power to suppress evidence for statutory violations.[22] *See McNabb v. United States,* 318 U.S. 332, 340-47 (1943); *Miller v. United States*, 357 U.S. 301, 312-14 (1958); *United States v. Roberts*, 779 F.2d 565, 568 (9th Cir. 1986); *United States v. Dreyer*, 804 F.3d 1266, 1278 (9th Cir. 2015) (en banc).[23]

The government argues that *McNabb* and its progeny have fallen into disfavor because those cases represent a time when the Supreme Court improperly created judicial remedies when statutes were otherwise silent.[24] *See United States v. Santos-Portillo*, 997 F.3d 159, 164 (4th Cir. 2021). As one example of how the Supreme Court has purportedly changed its view on suppression as a remedy for a

---

[22]  AOB-27–33.

[23]  The government warns that a decision recognizing suppression as a remedy would create a circuit split. GAB-22, 34. But there is a circuit split already. Contrary to the out-of-circuit cases cited by the government and the district court, this Court's precedent establishes that suppression can be a remedy for a statutory violation.

[24]  GAB-25–26.

statutory violation, the government cites *Hernandez v. Mesa*, a case analyzing the availability of a *civil* damages remedy under an asserted *Bivens* claim.[25] 140 S. Ct. 735, 743-44 (2020). As the dissenting judge in *Santos-Portillo* explained, however, "judicially implying a cause of action into a statute—thereby creating rights and imposing external liabilities where none previously existed—is a different exercise of judicial authority than imposing evidentiary sanctions." 997 F.3d at 168 (Floyd, CJ, dissenting). And a court's ability to suppress evidence as a remedy for a statutory violation "does not turn on whether we can imply such a remedy into the statute—either as an act of statutory interpretation or of federal common-law." *Id.* Because cases like *Mesa* occupy a different doctrinal space regarding implied causes of action, they are inapposite to the analysis of whether suppression is an appropriate remedy for a violation of § 1357(a).

The government refuses to acknowledge that § 1357(a) implicates Fourth Amendment concerns in a significant way. It wrongly analogizes a violation of § 1357(a) to the violation of the Vienna Convention discussed in *Sanchez-Llamas v. Oregon*, 548 U.S. 331 (2006).[26] There, the Supreme Court pointed out that "[t]he violation of the right to consular notification . . . is at best remotely connected to

---

[25] GAB-25–26.

[26] GAB-28–29.

the gathering of evidence." *Id.* at 349. But § 1357(a) concerns the limits on ICE officers' authority to arrest, and just as night follows day, searches for evidence have long followed arrests. *See Birchfield v. North Dakota*, 579 U.S. 438, 458 (2016) ("The search-incident-to-arrest doctrine has an ancient pedigree. Well before the Nation's founding, it was recognized that officers carrying out a *lawful* arrest had the authority to make a warrantless search of the arrestee's person.") (emphasis added). Moreover, § 1357(a)(4) specifically discusses when ICE officials can "make arrests for felonies." Thus, the statute plainly contemplates criminal investigations, arrests pursuant to such investigations, and searches incident to those arrests. As a result, the statute implicates important Fourth Amendment concerns tied to arrests and searches incident to arrest.

Moreover, "police win little, if any, practical advantage from violating" the Vienna Convention. *Sanchez-Llamas*, 548 U.S. at 349. In stark contrast, ICE officers gain a key advantage by violating § 1357(a)—they can arrest a suspect without a warrant and then use any evidence found incident to that arrest against the suspect. That is precisely what happened here, where the ICE officers found evidence they otherwise may not have found had they complied with § 1357(a).

The government suggest that the only proper forum for suppression based on § 1357(a) violations is immigration proceedings.[27] But the government itself acknowledges that "the exclusionary rule generally does not apply in removal proceedings," and is only applicable in limited circumstances.[28] And even if suppression were a remedy in immigration proceedings, this case demonstrates why it would be inadequate to deter misconduct—the fruits of the statutory violation included a gun used to charge Flores-Altamirano with a non-immigration crime but would be of little use to the government in immigration proceedings.

The government goes on to argue that the costs of suppression here would outweigh the benefits, thus making suppression inappropriate.[29] When analyzing the appropriateness of suppression to deter future statutory violations, exclusion "is warranted only when the deterrence benefits outweigh [the] heavy costs." *United States v. Dreyer*, 804 F.3d 1266, 1278 (9th Cir. 2015) (en banc) (cleaned up). But that determination involves a factfinding balancing test based on the circumstances of a particular case; it does not categorically preclude suppression.

---

[27]  GAB-29.

[28]  GAB-30.

[29]  GAB-27–29.

The government also claims suppression would not result in deterrence because ICE officers are "rarely involved in criminal cases" and there are internal disciplinary procedures for addressing violations of § 1357(a).[30] The first assertion is belied by the scores of § 1326 cases this Court reviews each year, not to mention cases (like this one) where searches incident to arrests by ICE officers turn up evidence of other crimes. Moreover, nothing in the record supports the conclusion that ICE officers are appropriately disciplined for not complying with § 1357(a). Certainly nothing suggests that the ICE officers involved here were sanctioned for violating § 1357(a)'s requirements.

Finally, the government contends that suppression can sometimes preclude convictions, at significant social cost.[31] "[W]hile it is true that applying the exclusionary rule . . . will mean that a guilty defendant goes free, that is true of applying the exclusionary rule in essentially every case." *United States v. Ngumezi*, 980 F.3d 1285, 1291 (9th Cir. 2020). Accordingly, that consideration does not categorically bar suppression for statutory violations like the one at issue here.

---

[30]   GAB-26–27, 29.

[31]   GAB-28.

18

While the above considerations may be weighed when a district court exercises its discretion to decide whether suppression is appropriate in a given case, none of them preclude suppression as a matter of law.

## C. The government does not dispute that if suppression is not categorically precluded here, the Court should remand for the district court to exercise its discretion.

In his opening brief, Flores-Altamirano explained that if the Court finds the ICE officers violated § 1357(a) and that district courts have discretion to suppress the evidentiary fruits of such violations in appropriate circumstances, then it should remand.[32] A remand would allow the district court to exercise its discretion in the first instance and let the district court engage in necessary factfinding.[33] The government does not acknowledge, let alone refute, that argument, so it has waived any contrary arguments.[34]

---

[32] AOB-34–39.

[33] AOB-34–39.

[34] *Supra* Part 1. Indeed, the government wrongly suggests that Flores-Altamirano has asked *this Court* to order suppression based on the § 1357(a) violation. *See, e.g.*, GAB-25 ("Defendant urges this Court to suppress the evidence under its supervisory power.").

Although nothing further is necessary given the government's waiver, this case presents circumstances in which the district court could reasonably exercise its suppression discretion after appropriate factfinding.

First, the district court has already expressed alarm about the ICE officers' misconduct and acknowledged the need to deter such behavior in the future.[35] The government, however, tries to sidestep the misconduct entirely by assuming no warrant issued: "The district court assumed for purposes of deciding defendant's motion that the officers did not obtain an administrative arrest warrant prior to defendant's arrest. The government proceeds on the same assumption for purposes of this appeal."[36] It also minimizes the significance of the illegal warrantless arrest, claiming that "[h]ad the officers obtained a prearrest warrant, the outcome of the case would be the same."[37] But that's not a legitimate reason to deny suppression as a remedy when officers *do* violate the law; suppression would encourage them and other officers to follow the law in the future. *Cf. United States v. Lundin*, 817 F.3d 1151, 1162 (9th Cir. 2016) ("[T]o excuse the failure to obtain a warrant merely because the officers had probable cause and could have inevitably obtained

---

[35] ER-183–84 & n.2; AOB-34–35.

[36] GAB-12.

[37] GAB-33.

20

a warrant would completely obviate the warrant requirement of the fourth amendment.") (cleaned up).

Second, Flores-Altamirano cited multiple examples of ICE officers disregarding § 1357(a)'s requirements.[38] He certainly provided sufficient evidence of widespread disregard for § 1357(a) to warrant remand so that the district court can explore the issue and conduct necessary factfinding.

_____

For the foregoing reasons and for the reasons stated in the opening brief, the Court should reverse the district court's denial of Flores-Altamirano's suppression motion. Alternatively, the Court should conclude that the arrest did not comply with § 1357(a) and remand for the district court to decide in the first instance if suppression is appropriate.

December 19, 2023

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender
___/s/ *Howard Shneider*_____
HOWARD SHNEIDER
Deputy Federal Public Defender

_____

[38] AOB-35–37.

# Certificate of Compliance re Brief Length

This brief contains 4,276 words, excluding the items exempted by Fed. R. App.

P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5)

and (6). I certify that this brief complies with the word limit of Cir. R. 32-1.

December 19, 2023          _____/s/ *Howard Shneider*_____

                                         HOWARD SHNEIDER
                                         Deputy Federal Public Defender